**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 25-CR-393-CJN** |
| | : | |
| **JONATHAN MCCRIMMON,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

On the offense date, the defendant illegally smoked marijuana in a public space while he: (i) was in possession of a chamber loaded pistol; and (ii) had an outstanding warrant out of Prince George's County, Maryland. Although the defendant did not use or brandish the weapon, his decision to carry a loaded firearm while engaging in drug use posed a danger to those around him.

The defendant's unlawful conduct is in line with his criminal history, which includes several convictions and over thirty arrests for a range of offenses, including violent crimes. This deliberate and consistent disregard for the law warrants a stronger sentence to ensure the defendant is deterred from continuing down this path in the future.

Accordingly, the United States requests a sentence of 12 months of incarceration followed by 3 years of supervised release.

### I.     FACTUAL BACKGROUND

On September 17, 2025, at approximately 5:56 p.m., members of the Metro Transit Police Department stopped the defendant for publicly smoking marijuana in the Anacostia Metro Station Parking Garage. When law enforcement patted down the defendant pursuant to this lawful stop, they recovered a silver Armi Galesi, .25 caliber, pistol from his inner leg. The firearm was loaded with one round of .25 caliber ammunition in the chamber. At this time, the officers also observed

that the defendant had an outstanding warrant out of Prince Geoge's County, Maryland (warrant # D252074432), and he was placed under arrest as a fugitive from justice.

Law enforcement conducted a post-arrest interview with the defendant. During the interview, the defendant stated that he: (i) was publicly consuming marijuana at the Anacostia Metro Station's parking garage immediately before being contacted by the police; (ii) is convicted felon and understands that he is prohibited from possessing firearms and ammunition; and (iii) possessed and carried the loaded firearm that officers recovered from his person during his arrest.

The defendant was in fact previously convicted of a felony (Burglary in the Second Degree) in Prince George's County, Maryland[1], and he was sentenced to fifteen years of imprisonment (fourteen years, seven months, and two days being suspended) and five years of probation.

## II.    PROCEDURAL HISTORY

On September 18, 2025, a one-count complaint was filed against the defendant, which charged him with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year (18 U.S.C. § 922(g)(1)). (ECF No. 1). On the same date, the United States moved for the defendant to be detained pending trial, and the Court entered an order to that effect. On December 19, 2025, a one-count information was filed against the defendant, which charged him with the same offense as alleged in the complaint. (ECF No. 12). The information also contained a forfeiture allegation related to, among other things, the silver Armi Galesi, .25 caliber firearm, and .25 caliber ammunition seized from the defendant on the offense date. *Id*. at 2. On January 6, 2026, the defendant pled guilty—pursuant to a plea agreement[2]—to one count of Unlawful Possession of a Firearm and Ammunition by a

---

[1] Case No. CT160166X.

[2] As part of the parties' plea agreement, the United States agreed to cap its allocution at the bottom

Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year (18 U.S.C. § 922(g)(1)). (ECF No. 18). Sentencing is currently scheduled for April 13, 2026.

On March 30, 2026, the Final Presentence Investigation Report ("PSIR") was filed with the Court. (ECF No. 21). According to the PSIR, the defendant's estimated total offense level is 12, his criminal history category is II, and his guideline imprisonment range is 12 months to 18 months. *Id.* at 26. Pursuant to 18 U.S.C. 3583(b)(2), the Court may impose a term of supervised release of not more than 3 years. *Id.*[3]

### III.     LEGAL STANDARD

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;

---

end of the Estimated Sentencing Guidelines range, which is 12 months to 18 months of imprisonment. (ECF Nos. 18 at 4, 21 at 26).

[3] The United States agrees with these calculations.

(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
(i) issued by the Sentencing Commission . . .; and
(ii) that, . . . are in effect on the date the defendant is sentenced; . . .

(5) any pertinent policy statement –
(A) issued by the Sentencing Commission . . . and
(B) that, . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

But the Sentencing Guidelines are only "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). They "are not the only consideration." *Id*. A sentencing judge "should . . . consider all of the § 3553(a) factors," and "[i]n so doing, . . . may not presume that the Guidelines range is reasonable." *Id*. at 50. "[I]t is not error for a district court to enter sentencing variances based on factors already taken into account by the Advisory Guidelines, in cases in which the Guidelines do not fully account for those factors, or when a district court applies broader § 3553(a) considerations in granting the variance." *United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014) (citation and internal quotation marks omitted). In doing so, "the district court can rely on hearsay as evidence for its findings." *United States v. Miller*, 35 F.4th 807, 818 (D.C. Cir. 2022); s*ee also United States v. Jones*, 744 F.3d 1362, 1368 (D.C. Cir. 2014) ("Clear precedent permits hearsay to be used in sentencing decisions."). And the sentencing court can consider conduct by a defendant that was not charged or even for which a defendant was acquitted. *See*

*United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proven by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction.").

## IV.   ARGUMENT

The United States recommends that the Court sentence the defendant to 12 months of imprisonment followed by three years of supervised release. This sentence: (i) reflects the serious nature of the offense; (ii) addresses the defendant's history and characteristics; (iii) promotes respect for the law; (iv) provides just punishment for the offense; (v) affords adequate deterrence to criminal conduct; and (vi) protects the public from further crimes of the defendant.

### A.  The Nature and Circumstances of the Offense

The nature and circumstances of the offense support the requested sentence.

This event began with the defendant illegally smoking marijuana in the Anacostia Metro Station Parking Garage, i.e., a public space.[4] When law enforcement stopped Mr. McCrimmon for this illegal conduct, they quickly found a chamber loaded pistol in his inner leg. The officers also determined that the defendant had an outstanding warrant out of Prince George's County, Maryland.

Although the defendant never brandished or used the firearm during the offense, his possession of a chamber loaded pistol in a public area posed a danger to those around him. *See United States v. Blackson*, No. 23-CR-25, 2023 WL 1778194, at *7-8 (D.D.C. Feb. 6, 2023)

---

[4] *See* 22 D.C. Code § 48–911.01.

(finding the absence of evidence that a gun was used "does little to detract from" the danger posed by a firearm placed "at the ready . . . and easily within [the defendant's] reach"), aff'd, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar, 28, 2023); *United States v. Gassaway*, 21-CR-550, 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public."); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when the defendant's prior convictions indicate a predilection for violence); *United States v. Howard*, No. 20-MJ-181, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community.").

The defendant's concurrent drug use, coupled with his arrest history, only exacerbated the danger posed by his possession of a loaded firearm in a public place. The Court should consider this combination of factors and attendant risks when fashioning its sentence.

## B. The Defendant's History and Characteristics

The defendant's criminal history demonstrates that he repeatedly engages in unlawful conduct and disregards court orders.

First, the defendant has two criminal convictions for: (i) Burglary 2nd Degree in Prince George's County Circuit Court, Maryland, where he was sentenced to 15 years of imprisonment, 14 years, 7 months, and 20 days suspended (Case No. CT160166X)[5]; and (ii) Theft Second Degree, where he was sentenced to 30 days of imprisonment, credit for time served (Case No. 2023-CMD-

---

[5] Notably, several violation of probation petitions and bench warrants were issued in this case. (ECF No. 21 at 6-8).

004184). (ECF No. 21 at 6, 9). These convictions occurred in 2016 and 2025, respectively. *Id.*

Second, the defendant has been arrested more than 30 times from 2015 to 2025. *Id*. at 8-21. These arrests pertain to: (i) violent crimes (Assault Second Degree and Armed Robbery[6]); (ii) property crimes (Theft, Unlawful Taking of Motor Vehicle, Burglary, Malicious Destruction of Property, Trespass, Grand Larceny, Stolen Property with Intent to Sell); (iii) firearm crimes (Possession Prohibited Weapon, Felon in Possession); and (iv) miscellaneous crimes (Failure to Appear, Fugitive from Justice, Bail Reform Act Misdemeanor). *Id.*

Third, the defendant has a pending case in Hyattsville, Maryland (Case No. D-05-CR-25-020462) where he was charged with Assault Second Degree. *Id*. at 21. According to the statement of charges in that matter, on or about May 13, 2025, the defendant allegedly struck the victim on the right side of his jaw, which caused the victim to, among other things, bleed from the mouth. *Id.* The defendant then fled on a Franconia-Springfield bound train. *Id.*

Fourth, and as previously stated above, the defendant had an outstanding warrant at the time of his arrest on this matter.

In short, the defendant's history demonstrates that he continually disregards the law, fails to follow court orders, and engages in violent conduct. The instant offense is yet another example of the defendant acting unlawfully and behaving in a dangerous manner.

Accordingly, the defendant's history and characteristics support his incapacitation and the requested sentence.

---

[6] According to the report related to this arrest, two unknown suspects entered a Family Dollar in Hyattsville, Maryland, and took items without paying. *Id*. at 18. When two of the store employees tried to intervene, one of the suspects brandished a handgun while inside the store and stated, "I'll shoot you in the face b***." The suspects then fled on foot with the merchandise. *Id.*

## C.  The Need for the Sentence Imposed

The requested sentence is sufficient but not greater than necessary to meet the goals of sentencing. Specifically, a sentence of 12 months of imprisonment and 3 years of supervised release will reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence to criminal conduct, and provide just punishment for the defendant's crime. The additional period of supervised release will also help keep the defendant accountable when he concludes his prison term.

## V.    CONCLUSION

For all the foregoing reasons, the United States respectfully requests that the Court impose a sentence of 12 months of incarceration followed by 3 years of supervised release.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:    /s/ *Joshua Satter*
JOSHUA SATTER
Assistant United States Attorney
N.Y. Bar No. 5477112
601 D Street NW
Washington, D.C.
(202) 252-7566
Josh.Satter@usdoj.gov